IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EMJ CONSTRUCTION, LLC F/K/A EMJ CORPORATION.,

    PLAINTIFFS,

v.

ZURICH AMERICAN INSURANCE COMPANY,

    DEFENDANT.

CIVIL ACTION NO.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, EMJ Construction, LLC f/k/a EMJ Corporation ("EMJ" or "Plaintiff"), by and through its attorneys, Saxe Doernberger & Vita, P.C., hereby complains and alleges as follows against Defendant Zurich American Insurance Company ("Zurich" or "Defendant"):

**PARTIES**

1. Plaintiff, EMJ, is a corporation currently organized under the laws of the State of Tennessee with its principal place of business located in Tennessee.

2. Upon information and belief, Defendant, Zurich, is a corporation currently organized under the laws of the State of New York with its principal place of business located in the State of Illinois.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there is an actual controversy between the parties; and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the

matter is between citizens of different states or countries.

4. The amount in controversy between Plaintiff and Defendant is approximately $4,826,673.00.

5. This Court has personal jurisdiction over the Defendant because it's principal place of business is located in Illinois and it conducts business in Illinois.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(c)(2) as Defendant's principal place of business is located in Schaumburg, Illinois.

## FACTUAL ALLEGATIONS
### The Covered Loss

7. On or around August 26, 2020 DSV Dallas Real Estate, Inc. ("Owner") and EMJ entered into a contract wherein the Owner hired EMJ to design and construction a product distribution center at 3001 Midpoint Dr. Lancaster, Texas 75134 (the "Project"). (the "Contract")

8. The Project consists of a metal roof constructed with metal roof decking materials (the "Materials").

9. The Materials were delivered to the Project, via multiple shipments, between March 15, 2021 and April 16, 2021.

10. The Materials were stacked and covered with tarps at the Project.

11. These stacks rested on the building pad subgrade soils.

12. Due to the unexpected amount of rain experienced, the subgrade became saturated and the stacks of Materials sunk into the ground, allowing portions of the deck to become submerged into standing water.

13. EMJ observed discoloration on the Materials. (the "Covered Loss")

14. On July 7, 2021 EMJ submitted an observation deficiency report

documenting the discoloration observed on the Materials.

15. The Materials were permanently damaged requiring EMJ to either replace the Materials or repair the Materials.

## The Insurance Policies

16. Zurich issued a Master Builder's Risk policy to EMJ for the policy period of May 5, 2021 to May 5, 2022 bearing policy number MBR 5321025-15 (the "Master Policy") (Attached hereto as **Exhibit A**).

17. Zurich issued a project specific Builder's Risk policy to EMJ insuring the construction of the Project for the policy period of October 22, 2020 to January 1, 2022 bearing policy number IM 1310559-00 (the "BR Policy") (Attached hereto as **Exhibit B**).

18. EMJ is the First Named Insured under the Master Policy and the BR Policy.

19. The Master Policy insures "direct physical loss of to 'builders risk property' caused by a 'covered cause of loss' while such 'builders risk property' is: 1. At the 'project site', 2. In transit, or 3. At a 'temporary offsite location'" (the "Master Insuring Agreement").

20. The BR Policy insures "direct physical loss of or damage to 'builders risk property' caused by a 'covered cause of loss' while such 'builders risk property' is 1. At the 'project site', 2. In transit, or 3. At a 'temporary offsite location'" (the "BR Insuring Agreement").

21. The Master Policy and BR Policy define "builders risk property" as "'Property under construction'; 'Landscaping materials'; and 'Temporary works', owned by the Insured or owned by others which are in the Insured's care, custody or control, or that the Insured is contractually responsible for and are included in the 'insured project'."

22. The Master Policy defines "covered cause of loss" as "any cause of loss or damage, not otherwise excluded in this Policy, which occurs during the Policy Term."

23. The BR Policy defines "covered cause of loss" as "direct physical loss or damage, not otherwise excluded or limited in this Policy, which actually occurs during the Policy Term. 'Covered cause of loss' does not mean: a. Direct physical loss or damage which actually occurred prior to the Policy Term, regardless of the date on which it first becomes manifest or is first discovered; or b. Damage."

24. The BR Policy defines "project site" as "the location of the 'insured project' as shown on the Declarations" which is identified as 3001 Midpoint Dr Lancaster, TX 75134.

25. The BR Policy is an all-risk policy that covers all fortuitous losses for all direct physical loss of or damage unless such losses are expressly excluded.

26. The BR Policy and Master Policy do not contain any exclusions for losses caused by water.

27. The Master Policy and BR Policy contain the "Expected, Preventable or Accumulated Losses" exclusion, stating "loss or damage caused by or resulting from wear and tear, gradual deterioration, inherent vice, hidden or latent defect, corrosion, rust or dampness or dryness of the atmosphere. But, if the result of one of these excluded causes of loss is a 'covered cause of loss', the Company will pay for that portion of the loss or damage which was caused by that 'covered cause of loss'."

28. The Master Policy contains the "Fungus" exclusion, stating:

> Loss or damage consisting of, directly or indirectly caused by, contributed to or aggravated by the presence, growth, proliferation, spread or any activity of "fungus", wet rot, or dry rot, including any expense to remediate the presence or effects of any of the foregoing,

unless resulting directly from a "covered cause of loss".

When caused by a "covered cause of loss", the most the Company will pay is the cost to repair, rebuild or replace the Covered Property damaged by that "fungus", wet rot, or dry rot. If reported to the Company within 90 days of discovery of the "fungus", wet rot, or dry rot from a "covered cause of loss", the Company will also pay the reasonable and necessary expenses to:

(1) Test for, monitor or assess the existence, concentration or effects of "fungus", wet rot, or dry rot;
(2) Tear out and replace any part of Covered Property needed to gain access to the "fungus", wet rot, or dry rot; and
(3) Clean up, remove or remediate "fungus", wet rot, or dry rot.

At the Insured's expense, the Insured must take all reasonable means to save and preserve property from further damage at the time of and after the discovery of the "fungus", wet rot, or dry rot.

29. The BR Policy contains the "Fungus" exclusion, stating:

Loss or damage consisting of, directly or indirectly caused by, contributed to or aggravated by the presence, growth, proliferation, spread or any activity of "fungus", wet rot, dry rot or bacteria, including any expense to remediate the presence or effects of any of the foregoing, unless resulting directly from a "covered cause of loss".

However, if the "fungus" was caused by a "covered cause of loss", the Company will pay the reasonable and necessary expenses to:

(1) Test for, monitor or assess the existence, concentration or effects of "fungus", wet rot, dry rot or bacteria;
(2) Tear out and replace any part of Covered Property needed to gain access to the "fungus", wet rot, dry rot or bacteria; and
(3) Clean up, remove or remediate "fungus", wet rot, dry rot or bacteria.

However, the most we will pay is the cost to repair, rebuild or replace the Covered Property damaged by that "fungus", wet rot, dry rot or bacteria, subject to the applicable Limit Of Liability.

At the Insured's expense, the Insured must take all reasonable

means to save and preserve property from further damage at the time of and after the discovery of the "fungus", wet rot, dry rot or bacteria.

The expenses will be paid only if they are reported to the Company in writing within 30 days of the date on which "fungus", wet rot, dry rot or bacteria is first discovered.

30. The Master Policy and BR Policy define "fungus" as "any form of fungus including, but not limited to, yeast, mold, mildew, rust, smut, mushrooms, spores, mycotoxins, odors or any substances or gases, products or byproducts produced by, released by or arising out of the current or past presence of fungi."

## The Covered Claim and Zurich's Wrongful Denial

31. Direct physical damage to the Materials caused EMJ to sustain significant costs to repair the damaged Materials.

32. The Insuring Agreement provides coverage for direct physical loss" to the Materials.

33. Based on the Policy language, the entirety of EMJ's damages incurred because of the Covered Loss is covered.

34. At all relevant times, the Master Policy was in full force and effect.

35. At all relevant times, the BR Policy was in full force and effect.

36. EMJ put Zurich on notice of the Covered Loss on or about July 30, 2021.

37. EMJ fulfilled all of its conditions and obligations under the Master Policy.

38. EMJ fulfilled all of its conditions and obligations under the BR Policy.

39. Zurich engaged EFI Global to conduct an inspection and provide Zurich with a "Moisture Damage Assessment."

40. EFI Global provided its report to Zurich on or around September 28, 2021.

41. On or around November 9, 2021 Zurich issued a letter to EMJ denying coverage for the Covered Loss.

42. On or around May 3, 2022 EMJ responded to Zurich's November 9, 2021 letter addressing Zurich's denial.

43. On or around August 24, 2022 Zurich responded to EMJ's May 3, 2022 letter confirming its denial of coverage for the Covered Loss.

44. On or around September 16, 2022 EMJ responded to Zurich's August 24, 2022 letter again disputing Zurich's denial of coverage for the Covered Loss.

45. On or around June 27, 2023 Zurich again wrote to EMJ confirming its denial of coverage for the Covered Loss.

46. To date, despite numerous demands, Zurich has issued no payment towards the Covered Loss.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – THE MASTER POLICY

47. EMJ repeats and realleges all the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

48. The Covered Loss and all resulting damages are covered under the Master Policy.

49. Zurich's issuance of the Master Policy to EMJ created a contractual relationship between EMJ and Zurich.

50. In consideration for premiums paid by EMJ, Zurich duly executed and delivered to EMJ the Master Policy and agreed to provide coverage pursuant to the terms and conditions of the Master Policy.

51. The Master Policy is a valid and enforceable written contract of insurance

7

which was in full force and effect at all relevant times referenced herein.

52. EMJ is, and at all relevant times was, in compliance with all conditions precedent for coverage under the Master Policy.

53. Pursuant to the terms and conditions of the Master Policy, Zurich is obligated to provide EMJ payment for its damages arising from the Covered Loss.

54. Zurich has failed, refused, or neglected to pay for the Covered Loss pursuant to the Master Policy and is in breach of its contractual obligations to EMJ.

55. Zurich's breach of its obligations to EMJ under the Master Policy constitutes a breach of contract.

56. By reason of the foregoing, EMJ has suffered, and continues to suffer, damages, including, but not limited to, the total amount of damages caused by the Covered Loss, interest from the dates of the Covered Loss, reasonable attorney's fees, and increased damages by reason of the conduct of Zurich with respect to the Covered Loss.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT – THE BR POLICY

57. EMJ repeats and realleges all the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58. The Covered Loss and all resulting damages are covered under the BR Policy.

59. Zurich's issuance of the Policy to EMJ created a contractual relationship between EMJ and Zurich.

60. In consideration for premiums paid by EMJ, Zurich duly executed and delivered to EMJ the BR Policy and agreed to provide coverage pursuant to the terms

and conditions of the BR Policy.

61. The BR Policy is a valid and enforceable written contract of insurance which was in full force and effect at all relevant times referenced herein.

62. EMJ is, and at all relevant times was, in compliance with all conditions precedent for coverage under the BR Policy.

63. Pursuant to the terms and conditions of the BR Policy, Zurich is obligated to provide EMJ payment for its damages arising from the Covered Loss.

64. Zurich has failed, refused, or neglected to pay for the Covered Loss pursuant to the BR Policy and is in breach of its contractual obligations to EMJ.

65. Zurich's breach of its obligations to EMJ under the BR Policy constitutes a breach of contract.

66. By reason of the foregoing, EMJ has suffered, and continues to suffer, damages, including, but not limited to, the total amount of damages caused by the Covered Loss, interest from the dates of the Covered Loss, reasonable attorney's fees, and increased damages by reason of the conduct of Zurich with respect to the Covered Loss.

## **PRAYER FOR RELIEF**

WHEREFORE, EMJ prays for the following relief:

1. A finding that Defendant breached the contracts by failing to provide coverage for the Covered Loss;

2. A finding that Defendant is required to immediately provide coverage for the Covered Loss and make payment to EMJ for the full amount of its losses;

3. All damages resulting from Defendant's breach of its contractual

obligations under the Master Policy;

4. All damages resulting from Defendant's breach of its contractual obligations under the BR Policy;

5. Pre-judgment and post judgment interest as permitted by law;

6. Attorneys' fees and costs;

7. All costs of Court; and

8. Any and all other legal equitable relief in EMJ's favor that this Court deems just and proper.

## JURY DEMAND

WHEREFORE, EMJ demands a trial by jury on all issues so triable.

Dated: August 15, 2024.

_____
Gregory D. Podolak (426213)
Anna M. Perry (697942)
SAXE DOERNBERGER & VITA, P.C.
999 Vanderbilt Beach Rd., Ste 603
Naples, FL 34108
GPodolak@sdvlaw.com
APerry@sdvlaw.com
P: 239-316-7244

ATTORNEYS FOR PLAINTIFF,
EMJ Construction, LLC f/k/a
EMJ Corporation